UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-434-H

MARIA ALONSO and
ELVIS RODRIQUEZ                                                                   PLAINTIFFS

V.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs purchased and insured a used vehicle which later turned out to have been stolen. When the FBI seized the vehicle as evidence in their criminal case against the car thieves, Plaintiffs sought recovery under their comprehensive vehicle insurance policy (the "Policy") with State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm denied coverage and this lawsuit followed. State Farm has moved for summary judgment and Plaintiffs have moved for additional discovery. The Court has reviewed the briefs and counsel made excellent arguments at a conference.

This case raises many interesting issues: whether Plaintiffs have an insurable interest; whether the incorrect information on the application might void their policy; and whether they have even suffered a loss as defined in the policy. While these questions are interesting and important, the Court concludes that the case can be resolved more directly by proceeding to construe the applicable policy provisions.

I.

Plaintiffs, Maria Alonso and her husband, Elvis Rodriquez, are Cuban ex-patriots who have obtained their U.S. citizenship. They have been insureds of State Farm since 2001. They purchased a 2002 Mercury Mountaineer which was added to the Policy on October 29, 2002. That vehicle was stolen on August 2, 2004. Plaintiffs reported the loss and eventually received payment on that claim in the amount of $19,824.26.

Plaintiffs then sought a replacement vehicle. They learned that an SUV was available for purchase from a private owner. They went to the home of a man named Leandro to look at the vehicle. They haggled over price and finally agreed to pay $12,000 for the vehicle. Plaintiffs applied to the Beacon Credit Union for an account and loan. Beacon provided the loan and required that it be named a loss payee under the Policy to secure the loan. Beacon was added to the Policy declarations sheet.

Plaintiffs received the title to the vehicle from the Kentucky Department of Motor Vehicles. The title was for a 2001 Chevrolet Tahoe with a VIN No. 1GNEC13T21J116683. Plaintiffs provided this information to State Farm's agent to add this vehicle to the Policy. Thus, on September 15, 2004, Defendant added this vehicle to the Policy together with the name of the lien holder, issued a premium charge and bound the coverage.

Sometime later, the FBI notified Plaintiffs that the vehicle in question had been under surveillance; that it may be a vehicle which was a component of a theft ring and that the FBI needed to retrieve the vehicle. Plaintiffs fully cooperated with the authorities and the FBI took possession of the vehicle on September 21, 2004. Plaintiffs promptly notified the State Farm agent of the loss and State Farm began its investigation. A claim file note dated October 4, 2004, already reflects that the authorities did not suspect Plaintiffs in any wrongdoing in respect

of the vehicle. In fact, the FBI wrote a letter of exoneration to Defendant in October of 2004.

State Farm continued to investigate the coverage questions and issued a reasonably prompt reservation of rights. Plaintiffs grew impatient with the delays and filed this lawsuit in the fall of 2005. Soon afterwards State Farm formally denied coverage on a variety of grounds. State Farm argues strenuously that Plaintiffs do not have an insurable interest in the vehicle and that misstatements on their policy application invalidate the coverage. Plaintiffs disagree on these issues and others. The Court believes that the case can be resolved on the more straightforward grounds of policy interpretation.

II.

Among other coverages, the Policy insures Plaintiffs against any loss to the insured vehicle. The Policy provisions broadly encompass any type of loss to an insured vehicle.[1] The comprehensive coverage provisions of Section IV of the Policy contains examples of losses covered:

> Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

This language is supplementary and explanatory and does not limit the otherwise broad Policy coverage. It does not exclude any losses, such as a loss occasioned by confiscation or other government taking. Thus, the broad Policy provisions cover losses due to a government action. One of the Policy exclusions, however, specifically provides that "there is no coverage for . . .

---

[1] Assuming for the moment that Plaintiffs have an insurable interest, that Plaintiffs' policy application does not otherwise invalidate the coverage and that Plaintiffs have suffered a loss. The original owners have already received reimbursement for the original loss by theft. For many reasons, Plaintiffs' rights to the vehicle undoubtedly take precedence over all others. The Court does not know the legal status caused by the vehicle impoundment.

loss to any vehicle due to . . . taking by any governmental authority." The case turns on whether a particular coverage exclusion applies here. The Court must consider this language carefully.

In this particular instance, the immediate loss of the vehicle is occasioned by the government's decision to seize the vehicle as evidence in a criminal case. Plaintiffs' loss did not arise directly because someone stole the vehicle and then fraudulently conveyed it to Plaintiffs. Rather, because the government decided to take their vehicle as evidence in a criminal case, the precipitating event is the government's decision. The exclusion at issue appears to apply unambiguously to our circumstances. To be sure, the underlying cause of the FBI seizure can be traced to the original theft of the vehicle and subsequent fraudulent sale. However, auto liability coverage is designed to cover losses stemming from events occurring after the commencement of coverage, not pre-existing ones. The apparent vehicle theft and fraudulent transfer occurred prior to the binding of insurance coverage. The only event occurring after commencement of coverage was the government taking. In this instance, State Farm never intended to insure Plaintiffs for losses or events that had preceded its coverage. Nothing in the policy provisions or general insurance law principles suggests a contrary result.

Plaintiffs argue that the exclusion should not apply because it was only meant to exclude coverage where the taking arose from the insured's own wrongdoing. The Court does not know whether such an intent to the exclusion can be proven. However, one cannot use such extrinsic evidence to alter the actual "governmental taking" language of the Policy which applies so broadly, clearly and unambiguously. The plain language of the exclusion suggests no such rationale or distinction based upon an appraisal of the insured's conduct. Moreover, the general across-the-board exclusion of coverage for all governmental takings makes sense in this

4

instance. Insurance companies do not typically insure against losses occasioned by an official government action. Therefore, the Court finds no reason to reform the plain policy language due to some unfair or illogical application to Plaintiffs' circumstances.

### III.

Plaintiffs have moved to compel certain discovery and to delay consideration of Defendant's dispositive motion. The Court has discussed the need for such discovery with counsel. The Court cannot perceive that additional discovery will affect the "governmental taking" conclusion which is the basis for the Court's decision. Whether the government's action effected a temporary or permanent taking might affect Plaintiffs' other remedies, but not those against State Farm. Plaintiffs' other discovery requests concern State Farm's marketing and indemnity procedures. This evidence would not appear to be in any way relevant to the interpretation or application of the "governmental taking" exclusion.

Because the Court has determined that State Farm is not liable for the loss of an impounded vehicle under its insurance policy, its decision to deny coverage cannot be grounds for a bad faith action. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000); *Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. App. 2004). On its face, State Farm had legitimate reasons to deny this claim. That State Farm took considerable time investigating whether Plaintiffs were responsible for the theft, thereby delaying its decision, does not amount to bad faith. *See Motorists Mut. Ins. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' discovery motions are DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is

SUSTAINED and Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

This is a final and appealable order.

cc: Counsel of Record